Erin Rose Ronstadt, SBN 028362
Clayton W. Richards, SBN 029054
OBER PEKAS RONSTADT, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745
(602) 761-4443 Fax
erin@oprdisabilitylaw.com
clayton@oprdisabilitylaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Walker, a widowed woman;<br><br>Plaintiff,<br><br>v.<br><br>Rain Bird Group Insurance Plan, an ERISA benefit plan; The Lincoln National Life Insurance Company, a plan fiduciary; UnitedHealth Group, a plan fiduciary; and Rain Bird Corporation, employer and plan administrator.<br><br>Defendants. | No.<br><br>**COMPLAINT** |

For her claims against Rain Bird Group Insurance Plan ("the Plan"); The Lincoln National Life Insurance Company ("Lincoln"); UnitedHealth Group ("UHG"); and Rain Bird Corporation ("Rain Bird" or "the Plan Administrator") (collectively, "Defendants"); Plaintiff Frances Walker ("Mrs. Walker" or "Plaintiff") alleges as follows:

## JURISDICTION, PARTIES, AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. This is an action by Mrs. Walker to recover life insurance benefits under an insurance policy issued to the Plan.

3. The Plan is a purported ERISA benefit plan established and maintained by Rain Bird for the benefit of its employees.

4. Mrs. Walker is a beneficiary of the Plan.

5. Mrs. Walker's deceased husband, Samuel Walker, was a Plan participant and employee of Rain Bird.

6. Rain Bird is the Plan Sponsor and Plan Administrator, a Plan fiduciary, and employer.

7. Lincoln was a third-party Claims Administrator and fiduciary of the Plan until December 31, 2018.

8. Under the Plan, Lincoln insured employees of Rain Bird for life insurance benefits pursuant to policy number 000010223738-00000 (the "Lincoln Policy") until December 31, 2018.

9. On information and belief, prior to December 31, 2018, Lincoln administered claims for life insurance benefits for Rain Bird under the Plan, acted on behalf of the Plan, and acted as an agent of Rain Bird or the Plan to make decisions regarding the payment or award of these benefits for the Plan and to administer the Plan.

10. On information and belief, UHG, through its subsidiary United Healthcare, was a third-party Claims Administrator and fiduciary of the Plan effective January 1, 2019.

11. On information and belief, effective January 1, 2019, UHG insured employees of Rain Bird for life insurance benefits under the Plan ("the UHG Policy").

12. On information and belief, effective January 1, 2019, UHG administered claims for life insurance benefits for Rain Bird under the Plan, acted on behalf of the Plan, and acted as an agent of Rain Bird or the Plan to make decisions regarding the payment or award of these benefits for the Plan and to administer the Plan.

13. Mrs. Walker is a citizen and resident of Pima County, Arizona.

14. The Plan and Rain Bird have their principal places of business in the State of California.

15. Rain Bird and the Plan are licensed and authorized to do business in Pima County, Arizona, and reside and are found within Pima County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

16. Lincoln has its principal place of business in the State of Indiana.

17. Lincoln is licensed and authorized to do business in Pima County, Arizona, and resides and is found within Pima County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

18. UHG has its principal place of business in the State of Minnesota.

19. UHG is licensed and authorized to do business in Pima County, Arizona, and resides and is found within Pima County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

20. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

21. This Court has jurisdiction over the claims subject to ERISA under 28 U.S.C. §§ 1132(a) and 1132(e)(1).

**GENERAL ALLEGATIONS**

22. Samuel Walker worked at Rain Bird from February 2, 1981 until his last date of work on June 7, 2018.

23. As of his last date of work, Mr. Walker worked as an Engineering Scientist.

24. Mr. Walker's Job Description is as follows:

> ENGINEERING SCIENTIST The Engineering Scientist has a solid understanding of the analytical, interpretive, and extrapolative aspects of engineering. This unique knowledge enables an engineer to bridge the gap between theoretical science and practical engineering. The Engineering Scientist forgoes specialization in a single discipline for a broader perspective of engineering and the ability to interact with a team of allied professionals. An extensive theoretical understanding of engineering principles and other physical sciences. Needs to provide a vast array of technical accomplishments that had resulted in significant technological advances in products. Usually requires vast experience with patents and proven record of results, innovation and creativity. Typically requires 10+ years of experience.

25. Mr. Walker was diagnosed with Mesothelioma in April 2018.

26. Mesothelioma is an incurable and deadly form of lung cancer.

27. Mr. Walker stopped working due to a Disability resulting from his medical condition.

-3-

28. As part of his employment, Mr. Walker received various employee benefits, including short-term disability ("STD"), long-term disability ("LTD"), and life insurance benefits.

29. The premiums for these benefits were 100% paid by Rain Bird on a pre-tax basis.

30. At the time of Mr. Walker's Disability and last date of work, Rain Bird contracted with Lincoln as the Claims Administrator and insurer for at least some of Mr. Walker's employee benefits, including STD, LTD, and life insurance benefits.

31. Mr. Walker applied for and received STD, then LTD benefits, through Lincoln from approximately October 25, 2018 until the date of his death on May 1, 2019.

32. While Mr. Walker's STD and LTD benefits are not contested, they are relevant to his life insurance claim with Lincoln and the definition of "Total Disability."

33. From Mr. Walker's last day of work on June 7, 2018 to December 31, 2018, Rain Bird paid Mr. Walker's life insurance premiums on his behalf to Lincoln, pursuant to a "Continuation Rights" provision in the Lincoln Policy.

34. This provision states that, although an Insured Person's eligibility for life insurance coverage stops when the Insured Person ceases Active Work, if the person is absent due to a Total Disability, coverage may be continued if Lincoln receives the required premium for the individual from the employer.

35. As of December 31, 2018, Plaintiff is informed and believes Rain Bird terminated its relationship with Lincoln.

36. Effective January 1, 2019, Plaintiff is informed and believes UHG became a third-party claims administrator and claim fiduciary with respect to life insurance benefits under the Plan.

37. On information and belief, Rain Bird stopped paying premiums on Mr. Walker's life insurance benefits to Lincoln as of December 31, 2018.

38. On information and belief, Rain Bird failed to pay premiums to its new insurer, UHG, for Mr. Walker's life insurance benefits.

39. Rain Bird did not notify Mr. Walker it had stopped paying life insurance premiums on his behalf.

40. Plaintiff had no knowledge of the change in life insurance carriers under the Plan.

41. On May 1, 2019, Mr. Walker passed away from cardiopulmonary arrest due to complications of Mesothelioma.

42. On May 3, 2019, Mrs. Walker emailed Lincoln regarding her husband's death and inquired about the process of filing for his life insurance benefits.

43. Lori Schmidt from Client Care Advocates, presumably an employee or contractor of the insurance brokerage firm Woodruff Sawyer, assisted Mrs. Walker with her life insurance claim with Lincoln.

44. On May 7, 2019, Nicole Herman from Lincoln documented in the internal notes: "5/7/19-Sent email to [employer] dmillan@rainbird.com for verification of prem[ium] continuance. Req[uested] life claimed am[ou]nts, bene[ficiary] des[ignation] and [certified death certificate]. Death notifier-self bill gr[ou]p. LTD claim [date last worked] 6/7/18 illness. Over age for waiver, no port[ability]/conv[ersion]. dma Contract 12 month wording."

45. This May 7, 2019 email was absent from Lincoln's disclosures to Mrs. Walker.

46. On May 7, 2019, Brenda Butters from Woodruff Sawyer emailed Lincoln asking, "[w]ouldn't there have been a waiver of premium for this member. I see you are asking if premiums were paid thru 2018 and 2019 for this member so just trying to understand why."

47. On May 7, 2019, Lincoln responded that, "[Mr. Walker] was over the age for the extension of death/waiver benefit. There was never a waiver claim. If premiums were not continued [Lincoln] would close the claim."

48. In response, Ms. Butters acknowledged, "[Rain Bird] changed carriers on 1/1[/2019]. So they would have had to continue premiums for any members still covered by Lincoln."

49. On May 10, 2019, Lincoln emailed Brenda Butters at Woodruff Sawyer, reiterating that Mr. Walker was over the age for a waiver of premium, and "[h]e would have had to

convert his life insurance within 31 days of his date last worked or premiums would have had to be continued."

50. On May 13, 2019, Ms. Butters responded to Lincoln, "so the employer could have continued premiums for this member correct?"

51. Lincoln responded in confirmation: "[p]er the contract, if an insured ceases active work due to illness or injury the employer may continue premiums up to 12 months after disability begins. If premiums were not continued there would be no coverage."

52. In a letter dated May 21, 2019, Lincoln denied Mrs. Walker's claim for life insurance (the "Denial").

53. In the Denial, Lincoln asserted that Mr. Walker did not qualify for the Extension of Death Benefit (*i.e.*, the waiver of premium) because of his advanced age – an issue not in dispute. Lincoln further asserted that, "Rain Bird terminated with Lincoln on 12/31/18, therefore the policy terminated 12/31/18 and Mr. Walker did not pass until 5/1/19 therefore no payable benefit at this time."

54. In the Denial, Lincoln further referred Mrs. Walker to the "Conversion Policy" language, noting that Mr. Walker had 31 days to convert his life insurance coverage from the date of termination – the period to convert the Lincoln Policy had long since expired.

55. Lincoln never offered Mr. Walker conversion rights, despite its duty to do so under the Lincoln Policy.

56. In its May 21, 2019 letter, Lincoln erroneously stated that, "Mr. Walker's date last worked was 09/04/2017 [*sic*] premiums may be continue [*sic*] for 12 insurance months making coverage effective until 10/1/18 at which time Mr. Walker would have 31 days to convert his life insurance coverage. No conversion application on file."

57. Mr. Walker's last date of work was June 7, 2018, which would have made his coverage effective until July 1, 2019.

58. On May 22, 2019, Lincoln issued a revised letter requesting that Mrs. Walker "file a life claim with [*sic*] new life insurance carrier." The new life insurance carrier, upon

-6-

information and belief, is UHG. Lincoln also removed the erroneous information about Mr. Walker's last date of work and coverage period.

59. On June 6, 2019, Mrs. Walker timely filed an appeal to Lincoln's May 21, 2019 adverse benefit determination (the "Appeal").

60. In the Appeal, Mrs. Walker noted that Lincoln never offered Mr. Walker a conversion policy. Mrs. Walker further expressed her belief that Rain Bird had been paying premiums for Mr. Walker's life insurance benefits up to his date of death.

61. In a letter dated June 6, 2019, the same date that Mrs. Walker submitted her appeal, Lincoln issued a third revision of its adverse benefit determination. In this letter, Lincoln misconstrued the Lincoln Policy by asserting Mr. Walker had no right to conversion, because he was not covered for five years with Lincoln *and* was not Totally Disabled pursuant to the Extension of Death Benefits Section.

62. The Lincoln Policy states a conversion benefit policy "may be purchased from the company if: (1) all or a part of anyone's insurance terminates due to amendment or termination of this Policy; and (2) that person has been covered continuously under this Policy for at least five years *or*, in the case of an Insured Person, such Insured Person is Totally Disabled as defined in the Extension of Death Benefit Section." (emphasis added.)

63. The Lincoln Policy should be construed to be exclusive, in that either Mr. Walker had to be covered for five years *or* be Totally Disabled under the Lincoln Policy to receive the conversion benefit. Alternatively, if the Lincoln Policy is intended to be inclusive, its terms are contradictory and ambiguous, because that is not what the Lincoln Policy states. ERISA policy ambiguities are construed in favor of the insured. *See e.g.*, *Feibusch v. Integrated Device Technology, Inc. Employee Benefit Plan*, 463 F.3d 880 (9th Cir. 2006).

64. In a letter dated June 21, 2019, Lincoln upheld its adverse benefit determination. In this letter, Lincoln rationalized:

> Based on our review of the information and the reasons indicated in this letter, we are unable to overturn the original denial of benefits.

-7-

> The policy offers an Extension of Death benefit for employees that become Totally Disabled before reaching age 60, however, Mr. Walker was over the age of 60 when his disability began and did not qualify for this benefit.
>
> We also found that during our review, Rain Bird Corporation terminated their life insurance policy with Lincoln on 12/31/18. As of that date, there was no coverage in place for Mr. Walker and therefore no active coverage when he passed away.
>
> Under the Conversion Privilege section of the policy issued to Mr. Walker, he had the right to convert his group insurance to an individual life policy within 31 days following the policy termination date of 12/31/2018 if he had been covered for five years or was considered Totally Disabled as defined by the Extension of Death Benefit Section. However, we do not show that a conversion took place and therefore coverage was not in place when he passed away.
>
> In your appeal, you indicated that Mr. Walker remained employed with an expected return to work date no later than June 12, 2019 and that premiums continued to be paid by Rain Bird. You noted conversion would not have been necessary. However, due to Rain Bird Corporations policy termination, there were no further active life Insurance benefits for Mr. Walker with Lincoln Financial Group after 12/31/2018.
>
> For groups that are considered Self-Billed, such as Rain Bird Corporation, **the employer is responsible for verifying eligibility for coverage in accordance with the terms of the policy, as we do not have access to employment records and coverage selection by their employees. The employer is also responsible for submitting the correct premium amount for the eligible employees.** The Lincoln National Life Insurance Company provides policy certificates that are delivered to the employer to give to their employees and the policy certificates are also readily available at any time if requested directly from our office. The policy certificates include all the policy provision wording defined above.
>
> Based on our review of the information in the file and the policy provisions, we are unable to approve benefits. You may want to contact Rain Bird Corporation to discuss filing a claim with their new insurance carrier if applicable.

(emphasis added.)

65. Rain Bird refused to respond to Plaintiff counsel's requests for information or offer help with how to file a new claim.

66. Under the Lincoln Policy, Mr. Walker is entitled to "[o]ne and one-half times [his] Basic Annual Earnings, rounded to the next higher $1,000." Mr. Walker's Basic Annual Earnings were $96,370.19. Mr. Walker's original basic life insurance policy was worth $145,000.00. However, because of his advanced age, Mr. Walker's life insurance benefits are reduced by 50%, making the value of his life insurance benefits $72,500.00 at the time of his death.

67. Under ERISA, Mrs. Walker has a right to receive a copy of all relevant documents free of charge within 30 days from the date of receipt of the request. *See* 29 C.F.R. § 2560.503-1(i)(5).

68. As the Plan Administrator, Rain Bird is responsible for ensuring that Mrs. Walker receives all documents relevant to her claim for benefits. *See id.*

69. On August 20, 2019, Mrs. Walker requested all relevant documents and Plan documents from Lincoln and Rain Bird via Certified Mail.

70. On or around September 5, 2019, Mrs. Walker received Lincoln's disclosure of relevant documents.

71. Plaintiff does not concede Lincoln provided a complete disclosure of all relevant documents as defined under ERISA, 29 C.F.R. § 2560(m)(8).

72. Rain Bird and the Plan did not produce any relevant documents.

73. On October 8, 2019, Mrs. Walker sent a second request for all relevant documents to Rain Bird and the Plan.

74. On November 13, 2019, Mrs. Walker sent a third request for all relevant documents to Rain Bird and the Plan, including Lincoln this time. She also emailed the request to a Ms. Manahan and Ms. Gonzalez, both employees at Rain Bird, and faxed the request, as well.

75. The Plan and Rain Bird had a duty to provide all relevant documents on or before September 12, 2019.

76. To date, Rain Bird has not provided relevant documents or even responded to Mrs. Walker's multiple requests.

77. The outstanding disclosures from the Plan and Rain Bird are critical to the analysis of the claim and Mrs. Walker's ability to fully and fairly appeal the denial of Mr. Walker's life insurance benefits.

78. Without a disclosure of the requested information from Rain Bird, Mrs. Walker is unable to fully assess the legitimacy of Lincoln's position and meaningfully participate in the appeals process.

79. Mrs. Walker exhausted her administrative remedies and timely filed this lawsuit.

## COUNT I
### (Recovery of Life Insurance Plan Benefits)
### (All Defendants)

80. All other paragraphs are incorporated by reference.

81. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

82. The Plan includes life insurance coverage and a promise to provide life insurance benefits upon Mr. Walker's date of death.

83. Mrs. Walker is the life insurance beneficiary under the Lincoln Policy or is otherwise entitled to the benefit as the insured's surviving spouse, pursuant to the terms of the Lincoln Policy.

84. Mrs. Walker has claimed the benefits under the Lincoln Policy to which she is entitled.

85. Mrs. Walker reasonably expected that she would receive life insurance benefits under the Plan when her husband passed away.

86. Lincoln improperly denied Mr. Walker's life insurance benefit in breach of the Plan and ERISA.

87. Alternatively, Rain Bird improperly denied or otherwise abandoned Mr. Walker's life insurance benefit in breach of the Plan and ERISA.

88. Rain Bird failed to ensure a responsible administrator and review of Plaintiff's claim for life insurance.

89. Alternatively, Plaintiff is informed and believes and UHG is responsible for paying the life insurance benefits.

90. Defendants' failed to comply with ERISA's requirements.

91. Defendants' violations are more than *de minimis* under ERISA's regulations.

92. Due to Defendants' violations and failure to comply with ERISA, Plaintiff is entitled to a de novo review of her claim for life insurance benefits.

93. Mrs. Walker is entitled to declaratory relief as to which Defendant is responsible for paying the life insurance benefit, and to declaratory relief that the life insurance benefit be paid.

94. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mrs. Walker is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

95. Either Lincoln, UHG, and/or Rain Bird must pay the life insurance benefits, which are properly and rightfully owed to Mrs. Walker.

96. Pursuant to 29 U.S.C. § 1132(g), Mrs. Walker is entitled to recover her attorneys' fees and costs incurred herein.

97. Mrs. Walker is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(All Defendants)**

98. All previous paragraphs are incorporated by reference.

99. This count is brought in the alternative to Count I and pursuant to 29 U.S.C. § 1132(a)(3).

100. Lincoln, UHG, and Rain Bird are fiduciaries under the Plan with fiduciary duties, including the duty to act prudently and in the best interests of Plan participants and beneficiaries.

101. As fiduciaries, Lincoln, UHG, and Rain Bird have a duty of loyalty to Plan participants and must deal honestly and fairly with them.

102. Lincoln, UHG, and Rain Bird failed to discharge their duties with the care, skill, prudence, and diligence that a prudent man or woman acting in like capacity and familiar with such matters would use under similar circumstances.

103. Said duties include, but are not limited to, knowing the important terms of the applicable Policies and so informing the Mr. Walker when appropriate; paying Mr. Walker's premiums to Lincoln or UHG to ensure continued coverage under the terms of the Plans; and promptly notifying Mr. or Mrs. Walker of any changes to or threatened cancellations of the Plans, any premium payment obligations, conversion rights, and reasons for the exercise of conversion rights.

104. Rain Bird failed to notify Mr. Walker of the change in life insurance carriers effective January 1, 2019 under the Plan, which necessitated continued premium payments by Rain Bird to Lincoln or UHG, or notification of conversion rights.

105. Plaintiff is informed and believes Rain Bird failed to continue premium payments to Lincoln.

106. Plaintiff is informed and believes Rain Bird failed to initiate premium payments for life insurance coverage to UHG on Mr. Walker's behalf.

107. According to email correspondence from a Rain Bird employee, Rain Bird's failure to initiate premium payments for life insurance coverage to UHG was based upon a representation by UHG to Rain Bird that Rain Bird should continue premium payments to Lincoln, because Mr. Walker's leave initiated while Lincoln still insured life insurance benefits under the Plan.

108. On information and belief, UHG (without due authority) instructed Rain Bird to continue paying premiums to Lincoln instead of accepting premiums from Rain Bird on Mr. Walker's behalf, in order to avoid liability on any potential claim.

109. Rain Bird erred in relying on advice from UHG and, even if true, is not absolved of its liability to pay benefits to Mrs. Walker.

110. Rain Bird did not notify Mr. Walker it would no longer pay premiums to Lincoln on his behalf.

111. Rain Bird failed to notify Mr. Walker of his conversion rights.

112. Rain Bird failed to protect its loyal employee, Mr. Walker, and to act in his best interests by ensuring life insurance continued for him.

113. Lincoln similarly failed to provide any such notification to Mr. Walker regarding termination of the Lincoln Policy and so-called rights to conversion.

114. Consequently, Mr. Walker and Mrs. Walker had no knowledge of the need to convert coverage, if such a need existed.

115. Mr. Walker and Mrs. Walker had no knowledge of the lapse in Mr. Walker's life insurance coverage.

116. Rain Bird breached its fiduciary duty to Mr. Walker by failing to pay life insurance premiums to either Lincoln or UHG on Mr. Walker's behalf in accordance with the terms of the Plan or the respective Policies, or in the alternative, by failing to notify him of his Conversion rights with Lincoln.

117. Rain Bird had knowledge that Mr. Walker would be harmed by a failure to disclose his Conversion rights.

118. Rain Bird had knowledge of Mr. Walker's incurable and deadly disease at the time it failed to disclose conversion rights and ceased payment of life insurance premiums.

119. Because Lincoln administered both Mr. Walker's STD and LTD claims, Lincoln also had knowledge of Mr. Walker's dire medical prognosis, his ongoing eligibility for LTD benefits under the Plan, and the need for continued life insurance premiums payments by Rain Bird.

120. Rain Bird also had an affirmative legal obligation under 29 U.S.C. § 1059(a)(1) "to maintain records with respect to each of [its] employees sufficient to determine the benefits due or which may become due to such employees."

121. Continued payment of life insurance premiums was one such benefit to which Mr. Walker was entitled.

122. On information and belief, either Rain Bird was unaware of, or remiss in, its obligation to continue life insurance premium payments on Mr. Walker's behalf under the life insurance Plan.

123. Rain Bird also did not comply with its disclosure obligations pursuant to ERISA. Under ERISA, a plan administrator must disclose notices to participants and beneficiaries. *See* 29 C.F.R. § 2520.104 (b)(1).

124. Both Lincoln and Rain Bird did not conform to the duties imposed upon fiduciaries under ERISA: "[A]n ERISA fiduciary duty to disclose information to beneficiaries is not limited to the dissemination of documents and notices specified in [the Act]," and "an ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits." *In re Fremont General Corp. Litigation*, 564 F. Supp. 2d 1156, 1159 (C.D. Cal. 2008) (quoting *Acosta v. Pacific Enterprises*, 950 F.2d 611 (9th Circ. 1991)).

125. Rain Bird is liable for under ERISA for its failure to provide adequate notice and to act in a fiduciary manner toward Mrs. Walker as it relates to a lapse in Mr. Walker's life insurance coverage prior to his death. *See Echague v. Metropolitan life insurance Company et al*, 43 F. Supp. 3d 994 (N.D. Cal. 2014).

126. Under ERISA, Rain Bird retains the responsibility for interpreting the Plan, applying the Plan's terms, and administering the Plan. ERISA does not allow Rain Bird, as the Plan Administrator, to delegate all of its fiduciary responsibilities to other parties.

127. Under the Lincoln Policy, life insurance coverage may be continued after Mr. Walker ceased Active Work if he is disabled due to illness or injury for 12 Insurance Months after the disability began and if Rain Bird pays premiums on his behalf.

128. Rain Bird is responsible for paying all premiums as they become due.

129. Rain Bird had a duty to pay premiums for Mr. Walker's life insurance coverage, whether under the Lincoln Policy or the UHG Policy, until at least July 1, 2019.

130. Rain Bird breached its fiduciary duties, causing *significant* financial harm to Mrs. Walker.

131. In a July 29, 2019 email to Mrs. Walker, Rain Bird explained, "Rainbird paid to Lincoln for [Mr. Walker's] life insurance until December 2018. When we transitioned to United Healthcare, United Heath Care told us that we should not make any payments to them since [Mr. Walker's] leave initiated during the time he was under Lincoln insurance and therefore they were responsible. As [a] result of this no payments were made to United Healthcare nor to Lincoln during 2019." This misunderstanding or misinformation does not exempt Rain Bird from its fiduciary obligations.

132. Woodruff Sawyer, Rain Bird's agent, misinformed Mrs. Walker regarding the terms of the Policy, stating "[u]nfortunately, the policy does state that [Mr. Walker] needed to be disabled by age 60 which was not the case. There is no way around this stipulation in the policy. Due to the timing of Samuel's passing, the claim would need to be made to United Healthcare (policy effective 1/1/2019). However, the United Healthcare policy does also require that the disability begin prior to age 60. There is just no way around that."

133. While Mrs. Walker cannot attest to UHG's policy, the Lincoln Policy does not require that Mr. Walker be disabled prior to 60 to collect benefits. This is merely regarding the waiver of premium issue, not Mr. Walker's life insurance coverage.

134. ERISA "does not elsewhere adequately remedy" the injuries caused to Mrs. Walker by Defendants' breach of fiduciary duty violations. Mrs. Walker seeks redress under 29 U.S.C. § 1132(a)(3) for the delay in the payment of benefits due and owing to her.

135. Mrs. Walker is entitled to pursue any equitable remedies that will put her in the position she would have attained but for Defendants' breach of their fiduciary duties under ERISA and the Plan.

136. Per the Lincoln Policy, retirement is the only restriction that can terminate the life insurance.

137. Mr. Walker never retired and was an employee up until his death.

138. Lincoln breached its fiduciary duty by failing to provide conversion rights to Mr. Walker when his Lincoln Policy terminated due to Rain Bird's failure to pay premiums.

139. Under the "Conversion Benefit-Policy Termination or Amendment" section of the Lincoln Policy, a conversion policy may be purchased from Lincoln if:

> (1) all or a part of anyone's insurance terminates due to amendment or termination of this Policy; and
> (2) that person has been covered continuously under this Policy for at least five years or, in the case of an Insured Person, such Insured Person is Totally Disabled as defined in the Extension of Death Benefit Section.

140. Because Mr. Walker's life insurance benefit terminated and he was Totally Disabled, he qualified for the Conversion Benefit.

141. Under the Extension of Death Benefit section of the Lincoln Policy, "Total Disability" means that Mr. Walker was "unable, due to sickness or injury, to engage in any employment or occupation for which [he] is or becomes qualified by reason of education, training, or experience" and "is not engaging in any gainful employment or occupation."

142. Mr. Walker had a pleurectomy and decortication in June 2018 secondary to Mesothelioma. He underwent post-surgical radiation treatment. He was hospitalized multiple times from December 2018 through May 2019 due to complications from the surgery, including fluid buildup in the lungs.

143. As noted in his LTD claim, "[Mr. Walker] is clearly [Totally Disabled] as he is in [the] hospital with [a] serious lung condition."

144. Lincoln further notes that, "[l]ong term path is [Mr. Walker] [is] expected to remain [Totally Disabled] for 12 month[s]."

145. Mr. Walker passed away on May 1, 2019 from cardiopulmonary arrest due to complications of Mesothelioma.

146. Inexcusably, Lincoln failed to assess whether Mr. Walker was Totally Disabled under the Policy to determine his rights to a Conversion Policy.

147. Lincoln and Rain Bird failed to provide Mr. Walker notice of his conversion rights as required by the Lincoln Policy.

148. Lincoln specifically misrepresented its duty to offer conversion rights in its communications with Mrs. Walker.

149. Lincoln critically omitted relevant provisions of the Policy in its adverse benefit determinations, thereby failing to provide Mrs. Walker with complete and accurate information pertinent to the Conversion Privilege under the Policy.

150. It is undisputed that neither Lincoln nor Rain Bird provided Mr. Walker with conversion rights as contemplated in the Policy.

151. Both Lincoln and Rain Bird have a fiduciary duty to convey complete, thorough, and accurate information that is material to a beneficiary's circumstances.

152. Mrs. Walker was harmed by Lincoln, UHG, and Rain Bird's breaches of fiduciary duties.

153. Based on the facts of this case, Mrs. Walker has "other equitable relief" available to her in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mrs. Walker whole for her losses from Lincoln and Rain Bird's breaching conduct.

154. In *Echague*, the Court found that equitable surcharge was an appropriate remedy for the ERISA Plan Administrator's breach of its fiduciary duty in failing to provide complete and accurate information to the participant or beneficiary, which ultimately resulted in a lapse of life insurance coverage. An equitable surcharge encompasses "make-whole" relief, including relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty.

155. Defendants' collective breaches of fiduciary duties necessitate further equitable relief, either through equitable surcharge (in an amount equal to Mrs. Walker's loss due to the Defendants' representations and/or nondisclosures regarding the conditions to ensure Mr. Walker's continued coverage under the Plans), equitable reformation (by rewriting and/or modifying the Plan in order to permit Mr. Walker's eligibility for life insurance benefits under the Plan at the time of his death), or equitable estoppel (by estopping

---

[1] A surcharge is a kind of equitable remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

-17-

Lincoln, UHG, and/or Rain Bird from relying on the failure to pay premiums after December 31, 2018 as a basis for denying life insurance benefits under the Plans).

156. As a direct and proximate result of the breaches of fiduciary duty, Mrs. Walker suffered actual financial harm and incurred financial expense.

## COUNT III
### (Statutory Penalties for Failure to Provide Plan Documents)
### (Rain Bird)

157. All previous paragraphs are incorporated by reference.

158. Pursuant to 29 U.S.C. § 1132(c)(1)(B), "any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

159. Under 29 U.S.C. § 1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

160. The disclosure requirements of ERISA are not empty suggestions for fiduciaries. The disclosure requirements amount to specific guidelines imposed for the purpose of ensuring that plan participants can follow and gauge the availability and character of ERISA Plan, including the very structure of the benefit plan itself. Without adequate disclosure, a participant cannot know or enforce her rights to benefits or anticipate alterations in benefits under the Plan.

161. Plaintiff is informed and believes that Rain Bird has intentionally refused to disclose Plan documents or otherwise respond to her request for Plan documents, because

Rain Bird knows it is liable for failing to pay life insurance premiums and does not want to provide incriminating documents.

162. Plaintiff is informed and believes that Rain Bird has intentionally refused to disclose Plan documents or otherwise respond to her request for Plan documents, because Rain Bird wants to dissuade her from seeking the benefits to which she is rightfully owed.

163. Rain Bird's actions have prejudiced Mrs. Walker, in part because its failure has prevented her from ascertaining the true, responsible party and from receiving life insurance benefits.

164. Mrs. Walker had to hire an attorney and now owes attorneys' fees and costs, which is yet another way that she has been prejudiced and harmed by Rain Bird's conduct.

165. Rain Bird has acted in bad faith, intentionally failing to disclose Plan documents at a time when Mrs. Walker, as a recent widow, needed fiduciary support and accountability. Instead, Mrs. Walker was misdirected and ignored.

166. Rain Bird has made no good faith effort to respond to Mrs. Walker's written requests for Plan documents. Despite emailing members of Rain Bird's management team, she has received no response. Laurie Manahan works as an Administrative Services Manager for Rain Bird. Cynthia Gonzalez, another Rain Bird employee, had personal knowledge of Rain Bird's failure to pay premiums. Neither employee assisted Mrs. Walker with her requests for information under ERISA.

167. Rain Bird's treatment of Mrs. Walker is outrageous, inexcusable, and in bad faith.

168. Rain Bird has not substantially complied with its ERISA obligations; instead, it has completely abandoned its ERISA obligations.

169. As the Plan Administrator, Rain Bird is liable to Mrs. Walker for its failure to properly disclose documents pursuant to 29 U.S.C. § 1132, *et. seq.*

170. Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day for each day that the Plan Administrator failed to provide a complete and proper disclosure Plan documents.

171. In light of Rain Bird's conduct, the Court should impose the harshest sanction available.

172. Penalties began to accrue thirty (30) days after the date a written request to the Plan Administrator is made for plan documents.

173. Mrs. Walker requested documents on August 20, 2019.

174. Penalties began to accrue on September 19, 2019.

175. Mrs. Walker is entitled to penalties, as well as interest, costs, and attorneys' fees.

176. Penalties continue to accrue under ERISA. Penalties shall continue to accrue until the Rain Bird, as Plan Administrator, properly discloses requested documents.

**WHEREFORE**, Mrs. Walker asks for entry of judgment against Defendants as follows:

    A. For all life insurance benefits due and owing;

    B. For appropriate equitable relief for Defendants' breach of fiduciary duty under 29 U.S.C. § 1132(a)(3);

    C. For statutory penalties against Rain Bird at the maximum penalty permitted;

    D. For an award of Mrs. Walker's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 351;

    E. For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

    F. For such further relief as the Court deems just and reasonable.

Dated this 27th day of March 2020.

                      OBER PEKAS RONSTADT, PLLC

                      By: *s/ Erin Rose Ronstadt*
                          Erin Rose Ronstadt
                          Clayton W. Richards
                          *Attorneys for Plaintiff*